Leonard V. TRIGGIANA,
Appellant,

v.

Theodore A. GENS, Appellee.

Patent Appeal No. 8949.

United States Court of Customs and
Patent Appeals.

Sept. 13, 1973.

Alvin Guttag, Fred S. Whisenhunt, William T. Bullinger, Washington, D. C. (Cushman, Darby & Cushman) Washington, D. C., for appellant. Joseph P. Nigon, Clarksville, Md., of counsel.

Roland A. Anderson, Washington, D. C., for appellee. Robert M. Poteat, David S. Zachry, Irving Barrack, Oak Ridge, Tenn., John A. Horan, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

BALDWIN, Judge.

This appeal is from that part of the decision of the Board of Patent Interferences that awarded priority of invention as to counts 3 and 4 of interference No. 96,136 to the appellee Gens.[1] Triggiana is involved through his application serial No. 554,345, filed June 1, 1966. Gens, the junior party, is involved

1. The only other count remaining in the interference, drawn to a process, was awarded to the appellant. Appellee did not appeal.

through application serial No. 578,428, filed September 8, 1966.

## The Invention

The invention is described as follows in appellant's brief:

> The invention is concerned with microspheres which consist essentially of uranium mononitride and are useful as nuclear reactor fuels. The microspheres must have a density equal to at least 90% of their theoretical maximum density, and are prepared by drying a sol-gel of uranium dioxide and carbon to "green" or new microspheres and firing these green microspheres, under special conditions, in a nitrogen atmosphere to convert the uranium dioxide to uranium mononitride while giving off carbon monoxide.

As pointed out in his brief, appellee's process for making the mononitride microspheres involves:

> a thermal cycling technique of reacting the $UO_2$–C microspheres in nitrogen at 1600°C and thereafter thermally cycling the microspheres from 1600°C to 1000°C and back to 1600°C in nitrogen.

The counts in issue read:

> 3. Crystalline microspheres consisting essentially of actinide mononitride, said microspheres having a density of at least 90% of theoretical.

> 4. Crystalline microspheres consisting essentially of uranium mononitride, said microspheres having a density of at least 90% of the theoretical.

## The Board's Opinion

■ Appellant stood on his filing date, and the board held that evidence submitted by appellee proved an earlier reduction to practice.

Appellee's evidence relates to work done at the Oak Ridge National Laboratory of the Atomic Energy Commission, which laboratory was operated by Union Carbide. It relates particularly to a run designated UN–16 made there on September 7 and 8 of 1965 to produce uranium mononitride microspheres from gel microspheres of urania-carbide, $UO_2$–C. The record shows that urania-carbide enriched sols were first prepared and then made into microspheres which were turned over to Gens. Run UN–16, on which Gens' assistant Johns did the laboratory work and Gens himself kept the records, is reported on page 14 of Exhibit 1, Gens' laboratory record of experiments done under his direction. Sheets requesting x-ray analysis and the determination of the density and the carbon, nitrogen and uranium content of samples prodiced by that run were submitted to the X-ray Diffraction Group and the Analytical Division of the laboratory, for analysis. The report of the x-ray analysis showed that the bright microspheres produced (separated from portions of the product having a dull finish) were uranium mononitride in crystalline form. A report of density determination, by toluene displacement, showed a value of 13.661 g/cc, about 95% of the theoretical uranium mononitride density of 14.31 g/cc. Chemical analysis was reported as (by weight percent) 94.2% uranium, 5.02% nitrogen and 0.61 or 0.64% carbon. Records of these tests were submitted in evidence and persons in the X-ray and Analytical Groups making the tests or in charge of them were called as witnesses as were Gens and Johns. Also in evidence, as appellant's cross-exhibit 1, is ORNL–3879, a report of the Oak Ridge National Laboratory of November 1965, which includes a description of the results of run UN–16.

In finding the evidence to prove actual reduction to practice, the board rejected arguments of appellant that the chemical analysis of the UN–16 microspheres did not prove that they met the count requirement of "consisting essentially" of the mononitride. It found adequate corroboration in the evidence as to the points on which appellee relied. It disagreed with a contention of appellant that the x-ray analyst, one Sherman, did not look for lines in the x-ray

representing other materials than the UN reported present. The board further disagreed with charges that the microspheres of run UN–16 were not spherical and that they were not reproducible because the composition of the sols used in connection with UN–16 was not determined. The board also found that the microspheres had utility, pointing to the disclosure in certain publications submitted by appellee under Rule 282.

Appellant submitted a petition for reconsideration and argued that the density of the microspheres was not in compliance with the count requirements because the toluene displacement method of measurement eliminated certain open pore space adjoining the surface from the measured volume of the microspheres. The board refused to consider this argument because it had not previously been raised.

OPINION

Before us, appellant's arguments go largely to charges that appellee's evidence is unreliable. For example, it points out that the figure "6" of the identification "UN–16" on page 14 of Exhibit 1 describing the run relied on and including the analysis results plainly was changed from some other figure; that the request for chemical analysis (Exhibit 2) with results thereon appears to have had the "6" in "UN–16" changed from a "7," and that the request for x-ray analyses with a report thereon (Exhibit 3) is marked "UN–19" instead of "UN–16." However, the testimony is convincing that the samples referred to in Exhibits 2 and 3 were undoubtedly microspheres from the UN–16 run. While Johns may have been uncertain at first about the number of the run when he commenced making out the test request sheets, he apparently promptly made very clear corrections of two of the sheets although he overlooked the third, Exhibit 3. In all three cases the correct run number was recognized where the test results were received and they were correctly entered on the page

14 report of the UN–16 run. Although appellant suggests the spheres may have come from a run designated UN–18 instead, the record shows that that run was not made until some time after the samples on which the analyses were run had already been delivered to the x-ray and analytical laboratories for analysis.

■ Appellant has also questioned the adequacy of the evidence of the x-ray tests and the reliability of the chemical tests. As to the x-ray tests, he challenges the failure of appellee to introduce the film into evidence. We do not find that significant. Sherman had the x-ray report before him when testifying and he had examined the film itself the day before. His testimony, although otherwise from recollection, appears completely reliable and the board did not err in accepting it as establishing that the bright microspheres of run UN–16 were crystalline uranium mononitride.

As to the chemical analysis, appellant makes much of the fact that the witness Botts failed to explain the significance of the expression $714/842$ used in connection with tests he made for uranium content of the microspheres. Appellant further states that the ratio is not the $U/U_3O_8$ ratio because "the molecular weight of uranium is *not* '714' but is 238" and seems to imply that the determination was in error for that reason. However, $714/842$ plainly is the ratio of the weight of uranium $(3 \times 238 = 714)$ to the total weight of $U_3O_8$ involved in the gravimetric analysis Botts made. We find nothing to indicate the tests were in error nor do we see much importance in the failure of Botts, the chemist who ran the tests, to recognize promptly the significance of a calculation made some four years earlier. As to his qualifications, Botts had a B.S. degree in chemistry and biology and had worked for seventeen years at Oak Ridge National Laboratory attaining the rank of supervisor of a laboratory in the Analytical Chemical Division. The various other attacks that appellant made on the reliability of the tests of the microspheres

have been considered but we likewise find them lacking in real substance.

A matter remaining is the charge, denied consideration by the board, that the density tests failed to prove that the microspheres had the required density of "at least 90% of theoretical." Appellant cannot deny that the value of 13.6616 attained by the tests of record amounts to well over 90% (approximately 95%) of theoretical. He charges rather that measurement by toluene displacement, by which that figure was attained, does not result in a true determination of the density of the microspheres because the toluene enters at least part of the void volume of surface pores in the microspheres and results in lowering the volume considered and thereby raising the density calculated.[2] The board refused to consider this argument on reconsideration because appellant had not raised it in briefs or arguments before it rendered its decision.[3]

▬ Appellee points out here that his application Example V, which describes the UN–16 run and is the disclosure relied on to support the counts, states that "[d]ensity measured by toluene displacement was 13.7." Toluene displacement is referred to in another example producing a lower density product but no other method of density measurement is mentioned in the application. Also, appellant's application does not describe any method of density measurement. Thus appellant's belatedly raised argument would appear to have been equally applicable to support a motion to dissolve as to appellee if appellant considered it meritorious. No such motion having been made, we find no justification for departing from our usual practice of declining to consider issues not

properly raised before the board. Even if the merits were considered, the circumstances would require agreement with the view the board obviously took, that the UN–16 microspheres met the density requirements of the count. See Dreyfus v. Lilienfeld, 49 F.2d 1062, 18 CCPA 1539 (1931); and Renz v. Jacob, 326 F.2d 792, 799, 51 CCPA 1200, 1208 (1964).

The board's finding that appellee's microspheres had utility was based on publications submitted by appellee including "Uranium Mononitride—a New Reactor Fuel," *Nucleonics*, September 1964, pp. 66–70. That article indicates that a number of installations had been studying UN as a nuclear fuel with promising results. We find no reversible error in the board's conclusion that these publications show utility for appellant's microspheres, which were proved to be UN in a very pure form.

Appellant's final argument is that the UN–16 results were not reproducible. He bases that position largely on a contention that the exact oxygen content of the uranium dioxide used in producing UN microspheres is critical to the final product. However, the record shows that appellee was aware of the importance of the amount of oxygen, carbon and uranium present and took it into account in his records and tests. Thus he recorded the ratio of carbon to uranium for the sol he ordered for use in preparing the product and had the $UO_2$–C microspheres analyzed for all three elements. We therefore agree with the board that the UN–16 microspheres could be reproduced by one skilled in the art.

The decision is affirmed.

Affirmed.

---

2. Appellant points out that density equals "mass per unit volume."

3. The board cited as authority Orenick v. Shield, 144 USPQ 277 (Comr.Pat.1953).