Erich F. MEITZNER and James A. Oline, Appellants,

v.

Morris MINDICK and Jerry J. Svarz, Appellees.

Patent Appeal No. 76–577.

United States Court of Customs and Patent Appeals.

Feb. 24, 1977.

Rehearing Denied April 28, 1977.

Eugene Sabol, Fisher, Christen & Sabol, Washington, D. C., attys. of record, for appellants; George W. F. Simmons, Robert A. Doherty, Rohm & Haas Co., Philadelphia, Pa., of counsel.

Herbert B. Keil, Michael P. Bucklo, Johnston, Keil, Thompson & Shurtleff, Chicago, Ill., David B. Kellom, Bernd W. Sandt, Midland, Mich., attys. of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

The junior party, Meitzner and Oline (Meitzner),[1] appeals from the decision[2] of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) awarding priority of the invention described in the ten counts in issue to the senior party, Mindick and Svarz (Mindick).[3] We affirm.

### The Invention

The invention involves a process of making porous copolymer beads and of forming these beads into anion-exchange resins; also, the copolymer-bead and anion-exchange-resin products. Counts 1–6 are directed to a process of making porous copolymer beads, with counts 5 and 6 further limited to beads "suitable for preparation of ion-exchange resin beads"; counts 7 and 8 add the steps of forming the anion-exchange resins; count 9 is a product-by-process claim to the copolymer beads; and count 10 is a product-by-process claim to the anion-exchange resins. The process comprises copolymerizing a monovinyl aromatic monomer (e. g., styrene) and a polyvinyl aromatic monomer (e. g., divinyl benzene) in an inert organic liquid that is a solvent for the monomers but a nonsolvent for the copolymer, while the monomer-organic liquid solution is dispersed in water, thereby forming porous beads of the copolymer. The porous beads are then chloromethylated and aminated to introduce anion-exchange groups therein. Counts 1, 5, and 7 are illustrative:

1. A process for producing copolymers of increased porosity which comprises:

(A) dissolving from 50 to 88% by weight of a monovinyl aromatic monomer and from 12 to 50% of a polyvinyl aromatic monomer in an inert organic liquid which is a solvent for the mono-

mers but is a nonsolvent for the polymerized product of the monovinyl and polyvinyl monomers, said solvent being present in an amount of about 30 to 70% by weight based on the weight of solution;

(B) incorporating said solution into an excess of water to form a dispersion of droplets; and

(C) copolymerizing said monovinyl and said polyvinyl monomers while suspended in said aqueous medium and in the presence of said inert organic liquid.

5. A process for producing solid vinyl-aromatic copolymer beads suitable for preparation of ion-exchange resin beads characterized by increased porosity and reduced swelling and shrinkage in use which comprises:

(A) dissolving a monovinyl aromatic monomer and a polyvinyl aromatic monomer in an inert organic liquid which is a solvent for the monomers but is a nonsolvent for the polymerized product of the monovinyl and polyvinyl monomers, said solvent being present in an amount of about 30 to 70% by weight based on the weight of solution;

(B) suspending the monomer solution as dispersed droplets in an aqueous dispersion medium; and

(C) copolymerizing said monomers in aqueous dispersion to form solid copolymer beads which upon chloromethylation to give an average of from 0.75 to 1.5 chloromethyl groups per aromatic nucleus and subsequent amination with trimethylamine yield trimethyl quaternary ammonium anion-exchange resins characterized in chloride form by:

(1) a water holding capacity of from 40 to 65 weight percent; and

1. Involved on application serial No. 749,526, filed July 18, 1958, and entitled "Polymerization Processes and Products Therefrom."

2. In interference No. 97,787.

3. Involved on patent No. 3,549,562, entitled "Production of Ion Exchange Resin Particles,"

issued December 22, 1970, on application serial No. 463,923, filed June 14, 1965, a continuation of application serial No. 691,541, filed October 22, 1957, the benefit of whose filing date was accorded Mindick for purposes of this interference.

(2) a volume expansion on conversion into hydroxide form of less than 30 percent.

7. A process for producing anion-exchange resins which comprises: chloromethylating a vinyl aromatic copolymer produced by the process of Count 5 to give an average of from 0.75 to 1.5 chloromethyl groups per aromatic nucleus, and thereafter aminating the chloromethylated copolymer to give an anion-exchange resin.

### Background

This is the third interference involving Meitzner and Mindick and the same applications or parent applications thereof. The first (No. 92,815) involved Meitzner, Mindick, and Corte (Corte and Meyer). When declared, the senior party was determined to be Mindick. During the motions period, both Meitzner and Corte moved to dissolve, under what was then 37 CFR 1.232 (subsequently 37 CFR 1.231), due to unpatentability of the count over the prior art. Contingent on denial of their motion to dissolve, Meitzner also proposed a substitute count; and, contingent on denial of their motion to dissolve, Corte also moved for the benefit of the filing date of a German application under 35 U.S.C. § 119 and to shift the burden of proof (making Corte the senior party). Mindick moved to substitute a count, which motion was opposed by Meitzner on the ground that the substitute count was unpatentable over the prior art. The Meitzner and Corte motions to dissolve were granted, as was Corte's motion for the benefit of the filing date of the German application and to shift the burden of proof. The motion of Mindick to substitute was denied because the substitute count was considered unpatentable over the prior art. After a petition (filed by Mindick) for reconsideration of (1) the decision to accord Corte the benefit of their foreign filing date and to shift the burden of proof, and (2) the decision to dissolve due to the unpatentability of the count (reconsideration of the decision to dissolve was opposed by Meitzner), the decisions were adhered to, and No. 92,815 was dissolved.

Mindick then filed a continuation application.

A second interference (No. 96,314), also involving Meitzner, Mindick, and Corte, was next declared on a different (phantom) count. As in the first interference, the senior party was determined to be Mindick. During the motions period, both Meitzner and Corte filed motions to dissolve due to unpatentability of the count over the prior art. Contingent on denial of their motion, Meitzner also moved to substitute counts; and, contingent on denial of their motion, Corte also moved to be accorded their foreign priority date and to shift the burden of proof (making Corte the senior party). In contrast to the first interference, the motions to dissolve were denied. The motion of Meitzner to substitute counts was also denied. The motion of Corte for their foreign priority date and to shift the burden of proof was granted. Meitzner then petitioned the Commissioner, urging that the count was unpatentable and that their proposed counts should be substituted. The Commissioner, acting through the First Assistant Commissioner and without reaching the merits of the petition, issued an order to show cause why No. 96,314 should not be dissolved. Both Meitzner and Mindick maintained that the interference should not be dissolved, with Meitzner arguing that the interference should continue on their proposed substitute counts. Nevertheless, the Commissioner dissolved the proceeding for failure "to litigate matters which could and should have been raised in prior interference No. 92,815 involving the same parties."

The Mindick application then reverted to ex parte prosecution, where the examiner rejected some of the claims on junior party estoppel arising from No. 96,314. Mindick petitioned the Commissioner for review of the estoppel rejection. The Commissioner, acting through the Group Director, granted the petition, holding that "the examiner erred in placing [Mindick] in the status of junior party in Interference No. 96,314 and any rejection based on such junior party

status is improper," because the decision granting the motion of Corte to shift in No. 96,314 was vacated by the Commissioner's dissolution of that interference. This left Mindick as the senior party in No. 96,314. The Mindick application was then passed to issue.

After the patent issued, Meitzner presented four claims for purposes of an interference with the Mindick patent, and the present interference was declared. During the motions period, Meitzner moved to amend by adding present counts 5–10, and Mindick moved to dissolve the interference on junior party estoppel for failure of Meitzner in the first interference to contest priority on all subject matter common to the Mindick and Meitzner applications. The motion to add counts was granted, and the motion to dissolve was denied because the Primary Examiner said he could not find a "clear basis" for applying estoppel.

*Board Opinion*

The board considered, among other issues,[4] whether there was junior party estoppel of Meitzner from contesting priority *vis-à-vis* Mindick with respect to counts 1–10, essentially the issue raised by Mindick's motion to dissolve which had been denied by the Primary Examiner. Based on findings of fact substantially as related above, it held Meitzner estopped from contesting "priority of the subject matter here involved," since they "failed, in Interference No. 92,815, to seek to contest priority *vis-à-vis* Mindick (with or without Corte) with respect to the present counts." It said that dissolution of that interference settled not only the rights of Mindick and Meitzner with respect to the court there involved, but also their rights with respect to *any* count that might have been the basis for a priori-

ty contest between them. The board added:

> Meitzner made no effort to move positively to contest priority of any proposed count in Interference No. 92,815, because his contingent motion to substitute was predicated on the Primary Examiner denying Meitzner's motion to dissolve. When the Primary Examiner granted Meitzner's motion to dissolve, Meitzner received all the relief in Interference No. 92,815 which he requested.

Although recognizing that Mindick had failed to raise the junior party estoppel issue in the second proceeding (No. 96,314), the board noted that the proceeding had been dissolved "based squarely on an estoppel theory." Finally, the board said:

> One reading the various decisions of the First Assistant Commissioner might well reach a conclusion that the estoppel was to run against both Meitzner and Mindick. However, such a conclusion would be plainly at odds with the provisions of 37 C.F.R. 1.257(b), which provide, in effect, that estoppel does not apply to a party enjoying the status of a senior party in an interference which is dissolved as a result of a motion under 37 C.F.R. 1.231. We note that consistent with the provisions of 37 C.F.R. 1.257(b), the Director held the Primary Examiner's action rejecting Mindick's claims 1 through 4 on the ground of junior party estoppel to have been improper.

Accordingly, the board awarded priority to Mindick on counts 1–10.

## OPINION

### Estoppel

■■■ We agree with the board that there is estoppel against Meitzner from claiming the subject matter of the present

---

4. The board also considered (1) Mindick's motion for judgment on the record, and (2) Mindick's motion to dissolve based on 35 U.S.C. § 135(b). After making its determination on the estoppel issue, the board considered each party's priority proofs. In considering Mindick's priority proofs, the board rejected the Meitzner argument that Mindick, having failed to move for the benefit of their parent applica-

tion with respect to counts 5–10 (when Meitzner moved to add these counts during the motions period), could not claim the benefit of their parent application and should have been made junior party. The board said that the time for Meitzner to raise this point was after the testimony period was set, with Meitzner designated to proceed first, as junior party.

counts. Meitzner failed to contest priority with respect to such subject matter in the first interference.[5]

▬▬▬ This court has held that a party to an interference has a duty to present *all* claims involving common subject matter with *any* of the other parties in the proceeding, and that failure to timely present these claims estops him from presenting them at a later time. *In re Shimer,* 69 F.2d 556, 21 CCPA 979, 21 USPQ 161 (1934). In that case the court said:

> [A]ppellant argues that there was no common subject matter between his application and that of MacClatchie in said interference, but that there was such common subject-matter between his application and that of Paterson et al., another party thereto; that the addition of said counts would have resulted only in a redeclaration of interference between appellant and the party Paterson et al., which would have resulted in no injury to Paterson et al. . . .
>
> . . . [I]f the matter was one which might have been determined in the first interference, the party having a right to have them [sic, it] so determined, who fails to do so, cannot afterward require their [sic, its] consideration. The rule prevails, irrespective of the number of parties in the original interference. In determining whether the same could have been so determined, the interference in fact depends chiefly upon the subject-matter disclosed, and not merely upon the language of the respective claims. . .
>
> * * * * * *
>
> It may be stated that this rule works no hardship to him who is diligent in pursuit of his rights. When an interference is declared, the files of his contest-

ants are open to him. He has full cognizance of their disclosures and claims. So advised, it becomes his duty to put forward every claim he has. Rule 109[6] affords him this opportunity. If the rule be not enforced or enforceable, then delays and litigation are greatly increased. It is quite obvious that the doctrine of estoppel . . . results in the better conduct of the business of the Patent Office and in the public good. [*Id.,* 69 F.2d at 557–58, 21 CCPA at 981–83, 21 USPQ at 163.]

*Accord, Avery v. Chase,* 101 F.2d 205, 26 CCPA 823, 40 USPQ 343, *cert. denied,* 307 U.S. 638, 59 S.Ct. 1036, 83 L.Ed. 1519, 41 USPQ 799 (1939). *Contra, American Cyanamid Co. v. Coe,* 70 App.D.C. 330, 106 F.2d 851, 42 USPQ 302 (1939); *International Cellucotton Products Co. v. Coe,* 66 App.D.C. 248, 85 F.2d 869, 30 USPQ 366 (1936). This doctrine of estoppel does not apply, however, to a party enjoying the status of a senior party in an interference that is dissolved as a result of a motion under 37 CFR 1.231. See 37 CFR 1.257(b).

The record clearly shows that Meitzner could have added the subject matter of the present counts in the first interference. The Meitzner application specification in the present interference is the same as in the first interference; and the Mindick patent specification is substantially the same as the application specification in the first interference. As admitted by Meitzner in their reply brief, only subject matter on two lines in the parent application was omitted in the patent specification involved in this proceeding.

It is argued by Meitzner that the board improperly found them estopped on counts 1–4, because the Mindick parent application does not clearly disclose "copolymers of in-

---

5. Also, we do not agree with Meitzner (see note 4, *supra*) that the board erred "in excusing Mindick et al.'s failure [in this interference] to move for the benefit of his [sic, their] parent application regarding counts 5 through 10" and "in summarily assuming that counts 5 through 10 are supported by the 1957 Mindick et al. parent application." Under 37 CFR 1.224 Mindick could rely on their parent application since

it was specified in the notice of interference. *Breen v. Cobb,* 487 F.2d 558, 179 USPQ 733 (Cust. & Pat.App.1973). If Meitzner questioned whether such reliance extended to added counts 5–10, it was for them to raise the issue after the testimony period was set.

6. The pertinent portions of then-Rule 109 are in substance incorporated in 37 CFR 1.231.

creased porosity" of any type, as recited in counts 1–4, so that these counts could not have been made in any prior interference. They state that the Mindick parent application only discloses *ion-exchange resins* of increased porosity. However, we note that the Mindick parent application expressly discloses that "porosity is achieved . . by polymerizing the monomers in the presence of certain proportions of a water-immiscible organic liquid solvent for the monomers," which is a clear disclosure that the *copolymer* has porosity. Also, this argument by Meitzner is contradicted by their statement in the first interference, namely:

> While the utility for the inventions in each of the applications in interference is in ion exchange resins, the improvements disclosed have to do with the preparation of a divinylbenzene-styrene copolymer which by steps well known in the art may be converted to an ion exchange resin. . . . It is apparent, therefore, that any common invention that exists among the applications in interference resides in the preparation of the base polymer . . . .

The statement recognizes that the "improvements" (e. g., increased porosity) are in the copolymer.

 It is further argued by Meitzner that the process disclosed in the Mindick parent application does not form copolymers having a "true porosity" (*i. e.,* macroporous structure), so that the application does not clearly disclose "copolymers of increased porosity." However, counts 1–4 do not require such a "true porosity," and it has not been shown that *only* copolymers having a macroporous structure have "porosity." Indeed, as acknowledged by Meitzner, the gel-type structures of the prior art have a "gel porosity." Even if counts 1–4 were limited to a process of forming copolymers having such a "true porosity," the argument that the Mindick parent application does not disclose "true porosity" is unsupported by evidence. Argument of counsel cannot take the place of evidence lacking in the record. *In re Lindner,* 457 F.2d 506, 59 CCPA 920, 173 USPQ 356 (1972); *In*

*re Schulze,* 346 F.2d 600, 52 CCPA 1422, 145 USPQ 716 (1965).

 We disagree with the contention of Meitzner that Mindick waived their right to raise junior party estoppel in this interference by not raising it in the *second* interference. It is stated by Meitzner that "[c]onsiderable delay and vexatious litigation might have been avoided had Mindick et al. acted in a timely fashion and brought the motion to dissolve based on alleged estoppel in the second interference." However, we note that the second interference was dissolved, following the Commissioner's order to show cause, on the basis of estoppel for failure "to litigate matters which could and should have been raised in [the first interference]." Thus, Meitzner suffered no "considerable delay and vexatious litigation." Although Mindick did not raise the issue, the reason for applying the waiver doctrine, as urged by Meitzner, is nonexistent. It is further stated by Meitzner that, by failing to move for dissolution of the second interference, Mindick "denied to Meitzner et al. their right to proceed . . with a motion to amend and/or to adversary argument before the Primary Examiner . . . ." However, the substance of the asserted "right" is speculative since Meitzner had moved before the Primary Examiner to substitute counts (which motion was denied).

Reliance by Meitzner on *Vickery v. Barnhart,* 118 F.2d 578, 28 CCPA 979, 49 USPQ 106 (1941), for the proposition that Mindick waived their right to rely on junior party estoppel is misplaced. In *Vickery,* this court held that the appellant was not allowed to raise the issue of disclaimer of invention *in the same proceeding,* since he had failed to timely move to dissolve the interference on that basis; hence the estoppel was based on a failure to follow Patent Office rules. The estoppel issue was properly raised *in the present proceeding* by a motion to dissolve.

 It is contended by Meitzner that the board's holding that the Primary Examiner erred in the first interference in according Corte senior party status suggests that the

present interference is an extension or continuation of the first interference. We do not agree. There was over a seven-year hiatus between termination of the first interference and commencement of this proceeding; moreover, the parties in the first interference were different from those in the present one, Corte being omitted here.

 It is urged by Meitzner that "it is inequitable to find Meitzner et al. estopped after finding Mindick et al., another junior party, not to be estopped," and that "[i]t is immaterial that Meitzner et al. is junior to Mindick et al." We do not agree. First, Mindick and Svarz were not "another junior party" in the first proceeding, but the senior party, since, as noted by the board, "the decision of the Primary Examiner granting Corte's motion [to shift the burden of proof] was clearly erroneous inasmuch as at the same time the Primary Examiner dissolved the interference." Second, even if Corte were the senior party in the first proceeding, this would be of no avail to Meitzner. Only estoppel against a party *and in favor of the opponent* is ancillary to the question of priority. *Bechtold v. Lanser*, 82 F.2d 415, 23 CCPA 1051, 29 USPQ 130 (1936). The estoppel against Mindick suggested by Meitzner would not be "in favor of" Meitzner, but rather "in favor of" Corte.

In view of the foregoing, we need not reach the other issues raised before the board.

 It is argued by Meitzner that "misrepresentations" by Mindick in ex parte prosecution of their patent application and in their actions before the board[7] render them a party with "unclean hands," and thus they should not be allowed to rely on the equitable doctrine of estoppel. However, this issue was not raised before the board and, therefore, is not timely raised now. See *Vogel v. Jones*, 486 F.2d 1068, 179 USPQ 425 (Cust. & Pat.App.1973); *Triggiana v. Gens*, 482 F.2d 1381, 179 USPQ 236 (Cust. & Pat.App.1973).

**7.** It is also argued by Meitzner that "[n]o corrective notations [to a table submitted to the board] have been made by Mindick et al. to this Court either." However, since, as stated by

### Fraud

It is alleged by Meitzner that the Mindick patent "contains false data the effects of which were to misrepresent and/or conceal the material facts and to mislead the PTO." Specifically, it is alleged that misrepresentations in the disclosure of test # 585 (which involved a bulk polymerization process) as a dispersion polymerization process and in the disclosure of certain chloromethylation catalysts (which were in fact zinc chloride) as aluminum chloride constitute "fraud and deception practiced by Mindick et al. upon the Patent and Trademark Office."

 It is clear, however, that the fraud issue was not raised before the board, notwithstanding that the facts upon which the allegation of fraud is based were developed during proceedings before the board. Moreover, the reasons of appeal set forth by Meitzner do not allege fraud as a basis of error in the board's decision. Accordingly, the issue is not properly before us. *Goodrich v. Harmsen*, 442 F.2d 377, 58 CCPA 1144, 169 USPQ 553 (1971). See *Vogel v. Jones, supra; Triggiana v. Gens, supra.*

### Attorney's Fees and Costs

Both parties have argued that they should be awarded attorney's fees and costs. Basis for the award advanced by Mindick is "[t]he unconscionable action of Meitzner in subjecting the assignee of the Mindick and Svarz patent to an interference where the work initially relied upon by Meitzner was known to have been abandoned." Basis for the award advanced by Meitzner is the fraud on the PTO allegedly perpetrated by Mindick in obtaining his patent.

 Generally, each party should bear his own costs of litigation, including attorney's fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, there are exceptions. Thus, where a statute or an enforceable contract so pro-

Meitzner, the "misrepresentations" are revealed in Svarz's testimony and this is of record, such "corrective notations" are not needed.

vide, attorney's fees are recoverable. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, 153 USPQ 432 (1967). Attorney's fees have been awarded to a successful party "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefitted class." (Footnotes omitted.) *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129–30, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). We are not persuaded that the record before us justifies an exception to the general rule.

■ It is urged by Mindick that we reconsider our position in *Reddy v. Dann,* 529 F.2d 1347, 188 USPQ 644 (Cust. & Pat.App. 1976), and hold that "this Court is empowered to award attorney's fees under [35 U.S.C. § 285 [8]] in exceptional interference cases." However, we adhere to the statement in that case that "[s]ection 285 . . . is clearly inapplicable to this court." *Id.* at 1349, 188 USPQ at 645.

**8.** **§ 285. *Attorney fees.***
The court in exceptional cases may award reasonable attorney fees to the prevailing party.

**9.** **§ 1912. *Damages and costs on affirmance.***
Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

**10.** **§ 1927. *Counsel's liability for excessive costs.***
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

**11.** Compare 28 U.S.C. § 1913 with 28 U.S.C. § 1926.

**12.** Indirectly, attorney's fees could be included in determining "excessive costs" for purposes of this statute.

**13.** It is argued by Mindick that the deposition of Dr. Harold Weaver (a chemist "in Technical

■ It is pointed out by Mindick that "28 U.S.C. § 1912 [9]] specifically authorizes a court of appeals to make [an award of attorney's fees] as part of the 'just damages' which may be awarded in the Court's discretion, and 28 U.S.C. § 1927 [10] authorizes any court of the United States to assess the excess costs occasioned by unreasonable and vexatious proceedings against the attorney responsible for them." However, 28 U.S.C. § 1912 only applies to "the Supreme Court or a court of appeals," and this court is not a "court of appeals" for purposes of that statute.[11] Although 28 U.S.C. § 1927 is applicable to proceedings before this court,[12] we are not persuaded that such proceedings instituted by Meitzner have increased the costs unreasonably and vexatiously, as required by the statute.[13] We note, in this connection, the background of this case set forth above, which shows that in the earlier proceedings there was considerable confusion within the PTO itself.

### Taxation of Printing Costs

Meitzner has moved to assess printing costs against Mindick for the portions of

Sales and Technical Sales Development in ion exchange resins" of the assignee of Meitzner at the time the present invention was made) shows that Meitzner had "abandoned" the work relating to swelling solvents, and, thus, that they are not entitled to a patent directed either to the use of swelling solvents or to the generic solvent counts of the present invention; and that subjecting Mindick to the present proceeding, in view of the "abandonment," warrants the award of attorney's fees. However, we note that Weaver's deposition merely shows that "it was very definitely the feeling of the inventors" that use of a nonswelling solvent "gave us something that distinguished it to a much greater extent over the prior art than did anything prepared by the use of toluene or other swelling solvents," and that this was "the basis for leaving toluene out of the [Meitzner] application." We agree with Meitzner that the application is broad enough to cover swelling solvents and that "exclusion of an express disclosure of an inferior mode" does not constitute abandonment under the circumstances of this case.

the transcript requested by Mindick. These can be divided into two groups: (1) those portions relating to the estoppel issue, and (2) those portions relating to the Mindick request for an award of attorney's fees and costs.

In determining the taxation of printing costs for portions of the transcript requested by appellees, appellants are only required to pay for so much of the transcript as is necessary for the court to decide the issues *they* raised on appeal; the costs of material needed for the court to make a decision on the issues raised by appellees and of unnecessary materials should be taxed against appellees. *Myers v. Feigelman,* 455 F.2d 596, 59 CCPA 834, 172 USPQ 580 (1972). Those portions of the transcript relating to the estoppel issue, which was raised by Meitzner in their Notice and Reasons of Appeal, are considered necessary for the court's decision on this issue. Accordingly, the cost thereof is to be paid by Meitzner. The portions of the transcript requested by Mindick relating to their request for an award of attorney's fees and costs [14] are to be paid by Mindick.

The decision of the board awarding priority to Mindick on counts 1–10 is *affirmed.*

*AFFIRMED.*

---

14. Items 9 and 13–17 of the listing filed with the court on March 19, 1976.