**John H. LITCHFIELD and Victor G. Vely, Appellants,**

v.

**Edward EIGEN, Appellee.**

**Patent Appeal No. 76–535.**

United States Court of Customs and Patent Appeals.

June 10, 1976.

Robert E. LeBlanc, Donald C. Casey, LeBlanc & Shur, Washington, D. C., attorneys of record, for appellants.

Max R. Millman, Philadelphia, Pa., Robert L. Stone, New York City, attorneys of record, for appellee; Millman & Jacobs, Philadelphia, Pa., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Patent Interferences (board) awarding priority to the senior party-patentee Eigen [1] against the junior party-applicants Litchfield and Vely [2] as to both counts in interference on the ground that Litchfield and Vely, although having been first to conceive, failed to show reasonable diligence from just prior to Eigen's conception to their reduction to practice. We affirm.

### The Contested Subject Matter

The invention in interference is an oral composition, useful for the prevention of dental caries and calculus. The counts are:

1. An oral composition comprising an effective amount up to 6.25% of a nontoxic, non-volatile material selected from the group consisting of the aliphatic aldehyde glutaraldehyde and the aliphatic aldehyde oxyderivative glyoxylic acid and a dental vehicle.

2. An oral composition in accordance with count 1, wherein the aldehyde ingredient constitutes .05–6.25% by weight of the composition.

Both parties claim to have made the invention in the course of research of somewhat broader scope. Their invention histories, as set out in the board's findings of fact, are helpful to an understanding of the issues.

1. Eigen is a party on the basis of his U. S. Patent No. 3,497,590, entitled "Oral Compositions Containing Non-Toxic, Non-Volatile Aliphatic Aldehyde," the application for which was filed August 24, 1967. The patent is assigned to Colgate-Palmolive Company.

2. Application serial No. 35,246, entitled "Anticaries Confectioneries and Oral Health Products," filed May 6, 1970, but accorded the January 10, 1969, filing date of copending application serial No. 790,314, now abandoned. The application is assigned to Wm. Wrigley Jr. Company.

## A. Litchfield and Vely

Litchfield and Vely were employees of the Battelle Memorial Institute at Columbus, Ohio. In February 1962, the L. A. Dreyfus Co., a wholly-owned subsidiary of their assignee Wrigley, engaged the services of Battelle to search for anticaries agents that were nontoxic, "non-pharmaceutical" (non-prescription?) and suitable for incorporation into chewing gum. Litchfield, Vely and Arthur C. Peters comprised the Battelle research team for the project. They selected candidate anticaries agents and tested them in vitro by microbiological assay. If a candidate anti-caries agent showed a significant level of activity in vitro, it was considered for further testing in vivo. During 1962 and 1963, the research team determined that various water-soluble aldehydes should be investigated. On April 3, 1964, Vely and his assistant, Powell, tested a solution of glutaraldehyde in vitro in concentrations of 0.1%, 0.05%, and 0.025% against *Streptococcus faecalis* strain FA–1. No later than April 14, 1964, Vely and Powell further tested glutaraldehyde in vitro against *Lactobacillus casei* ATCC 4646. As a result of these tests, Litchfield and Vely concluded that glutaraldehyde showed significant activity. There was no further activity with respect to glutaraldehyde until the period September 8, 1965, through December 8, 1965, when, under Peters' supervision, a 1% solution of glutaraldehyde was tested in vivo in rats. On April 13, 1966, a report, signed by Litchfield, was issued by Battelle to Wrigley classifying glutaraldehyde in the "1–plus" category, which Peters explained meant that the test results showed about a 25% reduction in caries incidence in vivo.

## B. Eigen

Eigen was section head of biochemistry at Colgate-Palmolive Company. Beginning about May 1964, Don N. Harris, a biochemist at Colgate, came under Eigen's supervision and was assigned a project of determining whether aldehydes were effective in inhibiting dental calculus. Eigen claims to have suggested using glutaraldehyde as an anti-calculus agent to Harris early in 1964; Harris, however, was unable to recall when testifying many years later, who specifically suggested the testing of glutaraldehyde. In any event, Harris entered aldehydes as possible anti-calculus agents in his notebook on April 23, 1964. On May 22, 1964, using an in vitro procedure, he tested glutaraldehyde in concentrations of 1.25%, 2.5%, and 6.25%. Based on these tests, Harris concluded that glutaraldehyde appeared to be a potential anticalculus agent. Harris discussed his conclusions from the in vitro tests with Eigen, and it was decided that glutaraldehyde should be tested in vivo. On June 25, 1964, Harris completed an in vivo test of glutaraldehyde in rats. Based on this test, Harris concluded that a 2.5% solution of glutaraldehyde produced a statistically significant reduction of calculus.

### The Board's Opinion

The board noted that at final hearing Eigen admitted that Litchfield and Vely had established conception in April 1964; the board stated that the specific date was April 3, 1964, when Vely and Powell tested glutaraldehyde solutions in vitro against *Streptococcus faecalis* strain FA–1. As to an actual reduction to practice by Litchfield and Vely, the board found that a glutaraldehyde composition falling within the scope of the counts was composed on behalf of Litchfield and Vely during the period September-December 1965 for the purpose of testing glutaraldehyde in vivo as an anticaries agent and that the utility of the composition was demonstrated when it was determined that the composition had an anti-caries activity in the "1–plus" category, i. e., when it was demonstrated that the composition decreased caries by about 25% as compared with control animals. Even though the in vivo test was completed in December 1965, the board did not accord Litchfield and Vely that date for a reduction to practice; rather, it accorded them the date of the April 13, 1966, report by Battelle to Wrigley, wherein "the first contemporaneous recognition of a 1–plus activity for glutaraldehyde by Litchfield appears * * *."

As to Eigen, the board stated that it believed "on the basis of the record before us, that Eigen conceived of the use of glutaraldehyde as an anti-calculus agent and that Harris tested glutaraldehyde *in vitro* on behalf of Eigen." The board accorded Eigen a conception date no earlier than May 22, 1964, since "the first corroborated documentary evidence relating to Eigen's conception appears in Harris' notebook dated May 22, 1964 * * *." That entry sets out Harris' in vitro test of glutaraldehyde. The board found an actual reduction to practice by Eigen on June 25, 1964, when "Harris—on behalf of Eigen—completed an *in vivo* test using a 2.5% solution of glutaraldehyde in rats and concluded from the test that glutaraldehyde produced a significant reduction of calculus," since the solution fell within the counts and a practical utility was demonstrated therefor.

Despite the earlier April 3, 1964, conception date accorded Litchfield and Vely, the board awarded priority to Eigen because Litchfield and Vely had not met their "*affirmative* burden of showing reasonable diligence" in that they had "not shown *any* affirmative action toward an actual reduction to practice * * * from May 21, 1964 [the day prior to Eigen's conception] * * * to September 8, 1965 * * * when *in vivo* tests were begun," nor had they shown an acceptable excuse or reason for their failure to take affirmative action during that period. The board was not persuaded by the assertion of Litchfield and Vely that the record excused their failure to take affirmative action during the critical period because it established that they were testing many other compounds according to "the regular procedure for testing compounds *in order,* within budgetary limits as animals became available * * *." The board stated that Litchfield and Vely had not offered "a detailed explanation pointing out when compounds were selected and tested."

### Appellants' Arguments

Litchfield and Vely argue that Eigen did not establish conception and reduction to

practice by *corroborated* evidence because neither Harris' oral testimony nor the documentary evidence presented establish conception by Eigen. Specifically, they state that Harris' testimony did not corroborate conception by Eigen because Harris was unable to recall who suggested that he test glutaraldehyde. Litchfield and Vely also state that there is no indication in any document of record that Eigen was responsible for the selection of glutaraldehyde for testing. They point to Harris' laboratory notebook and state that Eigen's name appears only as that of a witness to the in vitro test of glutaraldehyde.

Although Litchfield and Vely state that the above argument, if accepted, would moot the issue of diligence, they also argue that they have shown diligence or an excuse for the lack thereof, stating that the board erroneously ignored their exhibits 9–12 and 18 and Peters' testimony, which they maintain show continuous activity during the critical period. The exhibits are semiannual reports from Battelle to Wrigley summarizing the in vivo work completed during the period January 1, 1964—February 28, 1967. Litchfield and Vely admit that glutaraldehyde was not tested in vivo between the date established for the last in vitro test, April 14, 1964, and the beginning of the in vivo test on September 8, 1965. They maintain, however, that the summary reports, corroborated by Peters' testimony, demonstrate their continuous activity "directed to the project," meaning the research project as a whole, which involved many compounds in addition to glutaraldehyde. Litchfield and Vely explain their delay in testing glutaraldehyde in vivo as being due to "budgetary limitations" and the "availability of animals" for in vivo testing which resulted in a "backlog of compounds successfully tested *in vitro* which were awaiting available animals for *in vivo* testing."

### OPINION

▅ The board did not err in according Eigen a conception date of May 22, 1964. To argue that Eigen has not established conception because Harris could not recall

who placed glutaraldehyde on the list of aldehydes which he tested in vitro is to ignore the other facts of record which do establish his conception. Those facts appear in documents of record, contrary to the contention of Litchfield and Vely. Paramount among these is the documentary evidence of the in vitro test of glutaraldehyde by Harris. Litchfield and Vely do not contest that this test was conducted as described in Harris' notebook, nor do they contest the results of that test as set out therein. The notebook shows that glutaraldehyde was among several aldehydes tested in vitro by Harris, and Harris corroborated Eigen in testifying that Eigen assigned him the project of testing aldehydes for their effect on dental calculus. Eigen testified that he originated the concept of using aldehydes as anti-calculus agents; Harris' notebook corroborates Eigen's testimony. In Harris' notebook the following entry appears for April 23, 1964:

"In vitro" Calculus Prevention

\* \* \* \* \* \*

Discussion—Aldehydes have long been known to react with amino groups \* \* and has [sic] been used in the tanning industry for the tanning of collagen leathers. The ground substance of most mineralization sites has been shown to be collagen (bone, enamel etc.). Other workers have shown that if the amino groups are blocked, then calcification is prevented. We hoped that such a mechanism would apply in the search for a potential anticalculus agent.

Since it is clear that Eigen assigned the testing of aldehydes to Harris, it is reasonable to infer that the rationale set out in the notebook is the one Eigen gave Harris when he made the assignment. Thus, the notebook entry corroborates Eigen's testimony that his conception of aldehydes as anti-calculus agents was based on earlier work showing that removal of amino groups from an organic matrix with nitrous acid resulted in a matrix that did not calcify. The foregoing shows that, at least by April 23, 1964, Eigen had conceived the idea that at least some aldehydes might be use-

ful in the prevention of dental calculus because of their ability to block amino groups. It remained only to "test this theory out," as Eigen put it, by testing various aldehydes; this seems to be the only reason for testing any of the aldehydes which were tested, including glutaraldehyde. The record shows that Harris tested glutaraldehyde along with several other aldehydes; his notebook entry of May 22, 1964, discussing the results of those tests, states: "From these results, it appears as if aldehydes are combining with amino groups in the ground substance and preventing calcification." Thus, not only did Harris' tests show glutaraldehyde to prevent calcification in vitro, they showed that the mechanism by which it did so was precisely that postulated by Eigen, for whom the tests were conducted. We conclude that these tests, conducted to test Eigen's theory, redounded to the benefit of Eigen when they confirmed it, and thus, when Harris obtained the test results confirming Eigen's theory as to glutaraldehyde on May 22, 1964, it was the same as if Eigen had personally made the tests. As of that date, then, we hold that Eigen had a conception of the potential of glutaraldehyde as an anti-calculus agent.

 We find no error in the board's conclusion that Litchfield and Vely failed to exercise reasonable diligence in reducing their invention to practice. They admit that from their own conception in April 1964 to September 8, 1965, they did not test glutaraldehyde in vivo; in other words, during that period, none of their activity was directed to reducing their invention to practice. It is of no avail to them that their activities were continuously "directed to the project" of testing numerous compounds for anti-caries activity, for this is no explanation at all of why the in vivo testing of glutaraldehyde was delayed. Indeed, the fact that their summary reports for this period show continuous in vivo testing of other compounds indicates that throughout the period in question they possessed the capability of conducting such a test. To state that the delay was due to "budgetary limits established by the sponsor and the availability of animals" for in vivo testing is

not enough. Litchfield and Vely have an affirmative duty to show what "budgetary limits" they were operating under and what the "availability of animals" was in order for any tribunal to have the opportunity to determine whether the delay was reasonable in light of these factors. The reasonableness of the delay in light of the facts adduced is essential to excusing non-diligence. Litchfield and Vely have pointed to nothing in the record which shows what budgetary limitations they were working under, nor have they demonstrated how these limitations resulted in the delay in testing glutaraldehyde in vivo. The only evidence pointed to with respect to the availability of animals relates to the time ("several months") it took from February 1962 to grow the rats necessary for the in vivo testing then being considered. This delay, coming long before the in vitro test of glutaraldehyde by them, is obviously irrelevant. The only backlog pointed to in the record relates to "a backlog of in vivo tests they were going to reach in hamsters." There is nothing in this testimony as to what this backlog was due to, nor could the witness testify as to whether glutaraldehyde was in that backlog. Litchfield and Vely have not shown what caused the delay in testing glutaraldehyde in vivo, much less that such delay was reasonable. Given the fact, in addition, that Eigen was able to conduct an in vivo test within days of his in vitro test, the delay of Litchfield and Vely must be viewed as an extraordinary delay, and the lack of explanation thereof is fatal to their assertion of diligence.

### Taxation of Costs

 Litchfield and Vely have moved that we impose on Eigen the cost of printing certain parts of the record which he designated for printing, stating that these parts were unnecessary. These items, numbers 4–7 in Eigen's designation, are excerpts from the depositions of his witnesses Milton, Douglass, and King. We found none of this testimony necessary to our consideration of this appeal; accordingly, Eigen is taxed the cost of printing items 4–7.

The decision of the board is *affirmed*. *AFFIRMED.*