**HONEYWELL, INC., Plaintiff,**

v.

**Sidney A. DIAMOND, Commissioner of Patents and Trademarks, Defendant.**

**Civ. A. No. 79–2283.**

United States District Court,
District of Columbia.

Sept. 24, 1980.

Andrew E. Taylor, Walter C. Gillis, Arlington, Va., Sheldon W. Witcoff, L. Michael Jarvis, Chicago, Ill., Charles G. Merserequ, Clyde Blinn, Minneapolis, Minn., for plaintiff.

Joseph F. Nakamura, Sol., Fred E. McKelvey, Associate Sol., U. S. Patent & Trademark Office, Washington, D. C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Following denial of its application by the Patent and Trademark Office for a patent on a two–wire time–controlled thermostat, plaintiff invoked 35 U.S.C. § 145 (1976) and pressed its claims before this Court in a trial *de novo*. The Court has filed Findings of Fact and Conclusions of Law separately and submits this Memorandum to amplify the legal issues that have been fully briefed and argued by the parties.

Plaintiff copied its central claims from the patent application of Perkins, who had also developed a two–wire, time–controlled thermostat. If plaintiff is successful in this action the matter will be reinstated in the Patent Office, an interference declared, and a determination made as to whether plaintiff's inventor or Perkins is the first inventor. To prevail here plaintiff must establish that

(1) Plaintiff's claimed invention is not obvious in light of prior art. 35 U.S.C. § 103 (1976).

(2) Plaintiff's application sets forth the "best mode" known to the inventor for carrying out the invention. 35 U.S.C. § 112 (1976).

(3) The claimed invention was conceived prior to Perkins' filing date and reduced to practice with reasonable diligence from sometime prior to August 13, 1974, when the Perkins application was filed. *See* 35 U.S.C. § 102(e), (g) (1976).

As the conclusions of law state, the Court has determined that plaintiff has met only the first two requirements and failed as to the third, thus requiring that judgment be entered for defendant.

## Obviousness

The Board of Appeals determined that plaintiff's application revealed claims that were obvious over the prior art. *See* R–246 to 253. Similarly, the patent examiner had found that "Since Schaf is concerned with providing an alternate power source for a timer motor, the Examiner considers that it would be obvious to modify Nelson et al. by the addition of such a [Schaf] circuit." R–128. Plaintiff bears the burden of proof in demonstrating that its invention—contrary to the Patent Office finding—is not obvious. *DeSeversky v. Brenner,* 424 F.2d 857, 858 (D.C. Cir. 1970).

To test obviousness, the finder of fact must review the prior art, the differences between the prior art and the claims at issue, and the skill that could be expected of those working in the art. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). "Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.* at 17–18, 86 S.Ct. at 694; *see Scandiamant Aktiebolag v. Commissioner of Patents,* 509 F.2d 463, 466 (D.C. Cir. 1974).

The defendant set forth the prior art. The Nelson patent involves a thermostat with a "box" in the basement to provide the power necessary for the set–back function, while the Schaf patent discloses a clock powered by a rechargeable power source. The differences between the prior art and the device set forth by plaintiff were discussed at length both at trial and before the patent examiner and the Board of Appeals. Although it is difficult to determine exactly every difference between the plaintiff's invention and some combination of Schaf and Nelson, it is clear that no combination of the Nelson and Schaf patents eliminates the

need for additional circuitry in the basement—away from the main thermostat unit—in order to achieve the set–back function. Because the expressed goal of plaintiff's efforts in developing the Kompelien invention was to eliminate the need for additional circuitry, and thus ease installation and reduce expense, it is apparent that plaintiff's invention, which is self–contained and does not need additional circuitry elsewhere, involves more than just a combination of the two prior patents cited.

■■■ Although those skilled in the enterprise would realize that the Nelson and Schaf patents could not simply be superimposed to create a new thermostat, it is not at all evident that one skilled in the art could make the further adjustments necessary to create plaintiff's device. Indeed, the evidence is otherwise. Nelson himself, testifying at trial, stated that his patent and the combination of his patent with Schaf's did not render the Kompelien device obvious. *See* Tr. 72–74. What persons actually did in the prior art is indicative of the level of ordinary skill in the art, *U.S. Philips Corp. v. National Micronetics, Inc.,* 550 F.2d 716, 722 (2d Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 131 (1977), and in this case it took researchers more than a decade to perfect and market a set–back thermostat of the type plaintiff seeks to patent. The solution of a long–standing problem in the art is evidence that the combination was not obvious, as is the commercial success of the invention. *Graham v. John Deere Co., supra,* 383 U.S. at 17–18, 86 S.Ct. at 693–694; *Pollack v. Ladd,* 346 F.2d 799, 800 (D.C. Cir.), *cert. denied,* 382 U.S. 893, 86 S.Ct. 182, 15 L.Ed.2d 150 (1965).

■■■ Defendant contends—with some merit—that the delay in marketing a two–wire time–controlled set–back thermostat came not from technical difficulties, but from the problem of securing inexpensive yet accurate components that would make such a thermostat commercially successful.

To this extent, defendant argues, any solution of a long–standing problem or evidence of commercial success of the invention claimed cannot be given much weight in determining whether or not it was obvious. Defendant's argument, however, only minimizes and does not eliminate the fact that commercial success and satisfaction of a long–felt need are indicia that plaintiff has gone beyond the prior art in some way that involves inventiveness.

The parties have wrangled at length over the weight to be given the decision in *Robertshaw Controls Co. v. Emerson Electric Co.,* C.A. No. 6–71848 (E.D. Mich. 1978). In that decision, the claims in the Perkins patent identical to those of plaintiff were held not obvious over the prior art. There are two difficulties, however, in placing too much reliance on the Michigan decision: the prior art considered by that Court differed from the prior art here, and the decision was later withdrawn pursuant to a stipulation of the parties dismissing the case.[1] Without deciding precisely what weight those differences should be given, it is simply worth noting in support of the conclusion here that the same claims were upheld as not obvious by a federal district court that ruled on the merits.

For all these reasons, the Court finds that the Kompelien patent is not obvious in light of the prior art, and thus satisfies that criterion as set forth in 35 U.S.C. § 103 (1976).

*Best Mode*

Under 35 U.S.C. § 112 (1976), a patent applicant

(1) "shall" set forth an enabling disclosure so that any person skilled in the art can practice the invention, and

(2) "shall set forth the best mode contemplated by the inventor of carrying out his invention."

■■■ These requirements must be satisfied separately. *In re Newton,* 414 F.2d 1400, 1406 (C.C.P.A.1969). Because defend-

---

1. *But see Hook v. Hook & Ackerman, Inc.,* 233 F.2d 180, 183 (3rd Cir. 1956), *cert. denied,* 352 U.S. 960, 77 S.Ct. 350, 1 L.Ed.2d 325 (1957)

(treating trial judgment in similar situation as final determination on the merits).

ant is the party asserting noncompliance, it bears the burden of persuasion. *Weil v. Fritz*, 601 F.2d 551, 555 (C.C.P.A.1979).

■ There is no serious question that plaintiff satisfies the first prong of this test. The issue is whether plaintiff—by failing to disclose the Quartzmatic motor—failed to set forth the best mode contemplated by the inventor for carrying out his invention. Plaintiff asserts, and the evidence adduced at trial demonstrates, that the Quartzmatic clock motor was both widely known in the art and publicly available. *See* Finding of Fact 35. Plaintiff notes, quite correctly, that "an applicant for a patent need not expressly set forth in his specification matters which are commonly understood by persons skilled in the art," *Lundy Electronics & Systems, Inc. v. Optical Recognition Systems, Inc.*, 362 F.Supp. 130, 152 (E.D.Va.1973), *affirmed*, 493 F.2d 1222 (4th Cir. 1974) (citing *In re Johnson*, 282 F.2d 370, 372 (C.C.P.A.1960)). Furthermore, plaintiff notes that its competitors in marketing time–controlled two–wire thermostats used a different clock motor; this is evidence, plaintiff suggests, that disclosing a particular brand was not essential.

Defendant, in opposition, points out that plaintiff could have applied for a patent on the Kompelien invention in 1963, but chose not to do so because plaintiff could not obtain a clock motor suitable for its use. When plaintiff did find a clock motor—after a 10–year search—it failed to disclose that motor in its patent application. Defendant contends that this failure is commensurate with the failure of Union Carbide to disclose a known valve, *see Union Carbide Corp. v. Borg–Warner Corp.*, 550 F.2d 355, 361 (6th Cir. 1977), or the failure of Reynolds Metal Company to disclose a known epoxy resin and a filler that had been used successfully, *see Reynolds Metals Co. v. Acorn Building Components, Inc.*, 185 U.S.P.Q. 30, 32, 36 (E.D.Mich.1975), *affirmed*, 548 F.2d 155, 163 (6th Cir. 1977).

■ Certainly it would have been preferable for plaintiff to have disclosed in greater detail the components it found best suited for use in constructing the Kompelien invention. Plaintiff's competitor, the Robertshaw Company using the Perkins patent, did disclose a specific clock motor that it considered suitable for use in the set–back thermostat. But failure to disclose cannot be held a contravention of section 112 under the circumstances shown by the proof. Similar clock motors were widely available and widely advertised. It is not even evident that the Quartzmatic clock motor was significantly superior to any others except possibly in its price. Moreover, plaintiff has used another brand of clock motors as well in producing its time–controlled thermostats. All that has been shown is that once plaintiff became aware of the Quartzmatic motor plaintiff determined that it was feasible to construct the Kompelien invention for introduction in the commercial market. The Court thus finds that failure to disclose a particular clock motor did not constitute a failure to comply with 35 U.S.C. § 112 (1976), given the fact that other satisfactory clocks were available on the open market.

### Anticipation by Perkins and Due Diligence

■ The Court now reaches the most difficult issue: Is plaintiff's invention not patentable because it was anticipated by Perkins? *See* 35 U.S.C. § 102(e) (1976). The rule is well settled that the patent to Perkins will bar the grant of a patent to plaintiff unless plaintiff can demonstrate conception prior to the filing date of Perkins and reduction to practice with reasonable diligence beginning sometime prior to Perkins' filing date. *See* 35 U.S.C. § 102(e), (g) (1976).

■ It is clear that the plaintiff's inventor, Kompelien, conceived the invention prior to August 13, 1974, which is Perkins' filing date. Indeed, he conceived it more than a decade before, during 1962–63. At trial, Kompelien demonstrated the way in which each element in application claims 9 through 11 was shown on sketches made by him during 1962 and 1963, and defendant concedes that if claims 9 through 11 can be demonstrated, then the remaining claims in

the application likewise can be demonstrated. Not only did Kompelien execute his sketches, but he had in mind the means for putting the idea into practice, as required by the statute. *See Meitzner v. Corte*, 410 F.2d 433, 436–37 (C.C.P.A.1969). Although existing clock motors were not entirely satisfactory for commercial purposes, Kompelien knew these components were available and he envisioned how his invention could be practiced. Plaintiff amply meets the test for conception prior to the Perkins filing. *See Fredkin v. Irasek*, 397 F.2d 342, 348–49 (C.C.P.A.), *cert. denied*, 393 U.S. 980, 89 S.Ct. 450, 21 L.Ed.2d 441 (1968).

By filing a patent application on December 10, 1975, plaintiff achieved a constructive reduction to practice as of that date. Defendant contends that there was no actual reduction to practice at any time prior to that. date; plaintiff, on the other hand, contends that various models built during 1974 and 1975 constituted an earlier reduction to practice.

■ The law with respect to what constitutes a reduction to practice is not consistent and turns largely on the facts of each case. When the invention involves intricate machinery or sophisticated processes, *see, e. g., Cody v. Aktiebolaget Flymo*, 306 F.Supp. 728 (D.D.C.1969), *affirmed*, 452 F.2d 1274 (D.C.Cir.1971), *cert. denied*, 405 U.S. 990, 92 S.Ct. 1254, 31 L.Ed.2d 456 (1972) ("flying" lawnmower), more is required for a reduction to practice than in cases in which the invention is comparatively simple, *see, e. g., Sinko Tool & Manufacturing Co. v. Automatic Devices Corp.*, 157 F.2d 974, 977 (2d Cir. 1946) (cigar lighter); *cf. Farrand Optical Co. v. United States*, 325 F.2d 328, 332 (2d Cir. 1963) (optical device).

In any event, the *earliest* date on which plaintiff might have achieved a reduction to practice is the fall of 1974, when the "gray model," a mock–up of the circuitry involved in the Kompelien invention, was constructed. Plaintiff has conceded that it did not reduce the Kompelien invention to practice with any of its models prior to September, 1974, and the "gray model" was the first

embodiment of the idea constructed after that date. Only limited evidence is available with regard to the date on which the "gray model" was constructed. Plaintiff's witness John Whitney testified that the model was probably built in October, 1974, *see* Tr. 110, and that seems to be the best evidence. At any rate, the Court can conclude that plaintiff, at best, reduced the Kompelien invention to practice in October, 1974, a full two months after the Perkins filing date on August 13, 1974.

The issue is thus sharply presented whether or not plaintiff exercised reasonable diligence in reducing the Kompelien invention to practice, beginning sometime prior to August 13, 1974, and continuing until the "gray model" was constructed. And it is here that the Court must find that plaintiff's proof fails. Plaintiff has demonstrated regular activity on its thermostat project during the crucial period, but that activity primarily was aimed at commercial concerns. There was no reduction to practice at least until October, 1974, yet a reduction could have been achieved promptly at any time during the many years since 1963, because the required components, although not commercially satisfactory in all respects, were available. This weighs against plaintiff in the eyes of the patent law.

■ The standards for finding reasonable diligence are harsh. The public policy favors early disclosure, *see, e. g., Kendall v. Winsor*, 62 U.S. (21 How.) 322, 328, 16 L.Ed. 165 (1858); *Young v. Dworkin*, 489 F.2d 1277, 1279–81 (C.C.P.A.1974), and thus the law is reluctant to displace an inventor who was the first to disclose to the public his invention, *see, e. g., Naber v. Cricchi*, 567 F.2d 382, 385–86 & n.5 (C.C.P.A.1977), *cert. denied*, 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978). "It is well settled that, to satisfy the 'reasonable diligence' requirement of 35 U.S.C. § 102(g), the work relied on must ordinarily be directly related to reduction to practice of the invention of the counts in issue." *Id.* at 385. During this period there must be "reasonably continuous activity." *Burns v. Curtis*, 172 F.2d 588, 591 (C.C.P.A.1949).

■ The issue here, narrowly put, is whether plaintiff's activity–directed toward reducing to practice a time–controlled set–back thermostat that "would be of practical use to the public," see Plaintiff's Post–Trial Brief at 61–was sufficient to meet this test. The Court holds that it was not.

Plaintiff argues that its efforts were not directed solely towards commercialization of the invention. Plaintiff contends that it was concerned with testing components and ensuring that it could produce a thermostat that would be an advance over the existing set–back products. But testing of components under these circumstances was simply directed at achieving a product that would have commercial success and not at perfecting a scientific discovery by reduction to practice.

The difficulty with this case is that the Kompelien invention does not, strictly speaking, perform a "new" function. Other time–controlled set–back thermostats already existed. The Kompelien invention is an advance over the prior art only to the extent that it does the requisite job cheaper (by reducing installation costs), more easily (by reducing the need for a manual set–back), or with improved aesthetics (by reducing the number of visible wires). It will not be a satisfactory substitute if it lacks accuracy, or if its costs are too great. Plaintiff, in this situation, contends that a search for components that will satisfy the need for an inexpensive, yet accurate, reduction to practice should not be viewed as commercial activity.

■ Numerous cases admonish that commercial activity does not constitute "reasonable diligence" in achieving a reduction to practice. See, e. g., Burns v. Curtis, supra, 172 F.2d at 591; Petersen v. Thomas, 10 F.2d 908 (D.C.Cir.1926). This is particularly true when a party acknowledges, as in this instance, that it could have built a model and did not do so. Naber v. Cricchi, supra, 567 F.2d at 385. But these cases generally involve delays with regard to financing production of the product, not with perfecting the production. The parties have not cited, and the Court has not located, any cases that speak directly to the issue here.

In the absence of controlling case law, the Court must look to the purposes of the patent statutes. Plaintiff notes that the patent statutes seek to reward the first inventor, even if that inventor is not the first to reduce the invention to practice or to file for a patent, with only the requirement that the inventor proceed with reasonable diligence. This is true. But the patent law has a primary purpose to encourage disclosure, see, e. g., Kendall v. Winsor, supra ; Young v. Dworkin, supra, and reduction to practice triggers public disclosure. Through disclosure advances will be achieved more quickly than if each party attempts to work singly. In the case before the Court, for instance, it is possible that the search for a suitable clock motor would have reached a successful conclusion more quickly if other parties–both manufacturers and consumers–had realized that the motors had an additional use.

There is an additional reason for not considering plaintiff's activity with regard to finding a suitable clock motor as constituting reasonable diligence. Plaintiff has contended–and this Court has accepted–that the specific clock motor used was not essential to the thermostat. In discussing defendant's best mode arguments, the Court noted that a time–controlled two–wire thermostat could have been made with components other than the Quartzmatic clock motor. Plaintiff offered proof to this effect, and did not reveal this brand in its application. It would undermine the best mode argument if plaintiff could now rely on its testing of various motors to show reasonable diligence in achieving a reduction to practice.

If plaintiff cannot rely on its searching and testing for clock motors to constitute reasonable diligence–and the Court so holds–then there is scant evidence that plaintiff can use. Despite having all the necessary components sometime well before August 13, 1974, and despite the fact that it would require only a few days or possibly

two weeks to construct a working circuit,[2] plaintiff did not achieve a reduction to practice until "sometime" in October. When a reduction to practice was achieved, it was not even a full thermostat, but only a circuit mounted on a board. The Court holds that this activity did not constitute reasonable diligence within the meaning of 35 U.S.C. § 102(g) (1976).

It is regrettable that plaintiff will not have an opportunity to test its claim that Kompelien, and not Perkins, was the first inventor of the set–back time–controlled thermostat. But just as the patent statutes favor a first inventor, they favor disclosure to the public. Plaintiff, despite the admitted ability to construct a working model in the early 1960's, did not do so for more than a decade. The commercial reasons for delay made sense: Why seek a patent for a product that might have no value, or that might change radically before it is put on the market? But those reasons are not enough. If plaintiff's activity were excused, then an inventor could spend years improving its product's commercial aspects, and then file for a patent and extend what would otherwise have been the time for protection, without any risk that the patent would be lost. The law will not permit such a result.

Plaintiff's proof failed. The Clerk of Court is directed to enter judgment for the defendant, plaintiff to bear the costs. The complaint herein is dismissed.

SO ORDERED.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. This is a civil action under 35 U.S.C. § 145 (1976) in which Honeywell, Inc. (plaintiff) seeks an order authorizing the Commissioner of Patents and Trademarks (defendant) to allow claims 1, 2, and 4 through 11 of plaintiff's patent application, Serial No. 639,523, filed December 10, 1975, entitled "Time Controlled Thermostat," and naming Arlon D. Kompelien as the inventor. See Joint Stip. 1.[1]

2. Plaintiff's invention is described in the specification of the application. See R–2 to 6.[2] The invention relates to a two–wire time–controlled set–back thermostat powered by a rechargeable battery. A thermostat is a device that measures temperature and signals for a response from a heating or cooling unit when the temperature reaches a given point. See Joint Stip. 3.

3. A time–controlled set–back thermostat is one that will signal for action at one temperature for part of the day and signal for the same action at a different temperature for the remainder of the day. For example, such a thermostat can be set to signal a heater to activate when the daytime temperature reaches as low as 72°F and to signal the same heater to activate at night only when the temperature reaches as low as 65°F. See Joint Stip. 4.

4. Plaintiff's patent claims 1 through 8 were presented in the application at the time it originally was filed. Claims 9 through 11 were added subsequently for the purpose of provoking an interference[3] with a United States patent issue to Perkins (3,948,441). See Joint Stip. 8.

5. On December 22, 1976, a patent examiner withdrew claim 3 from consideration as being directed to a nonelected inven-

---

2. Having viewed the "gray model," the Court is of the view that two or three days would have been ample to construct the circuit.

1. Many of the findings of fact are undisputed by the parties and were set forth in a joint stipulation of facts submitted to the Court on April 2, 1980.

2. Reference is to the 20–volume administrative record. Pages have been renumbered so that they are consecutive.

3. See 35 U.S.C. § 135 (1976). An interference is a proceeding to determine which of two rival claimants to the same invention is the first inventor. See generally Klein v. Commissioner of Patents, 474 F.2d 821 (4th Cir. 1973). In the case of an interference between an applicant and a patentee, the invention must be patentable to the applicant before the interference will be declared. Brenner v. Manson, 383 U.S. 519, 528 n.12, 86 S.Ct. 1033, 1038, 16 L.Ed.2d 69 (1966); 37 C.F.R. § 1.201(b) (1979).

tion[4] and rejected claims 1, 2, and 4 through 11 as being unpatentable under 35 U.S.C. § 103 (1976) in view of the United States patents to Nelson (3,620,448) and Schaf (3,214,670). *See* Joint Stip. 9.

6. In due course, plaintiff timely filed a notice of appeal, *see* 35 U.S.C. § 134 (1976); 37 C.F.R. § 1.191 (1979), to the Board of Appeals within the Patent and Trademark Office. *See* Joint Stip. 12.

7. In its decision, adhered to on reconsideration, the Board of Appeals affirmed the final rejection of claims 1, 2, and 4 through 11 as being unpatentable under 35 U.S.C. § 103 (1976) over Nelson and Schaf. *See* Joint Stip. 13.

8. Prior to the invention defined in plaintiff's claims, electrical thermostats, including means for changing the temperature setting of the thermostat at selected times, were broadly known and used. Such thermostats included the following:

(1) *Hand–wound clock thermostats.* The clock had to be wound each time the temperature was set back.

(2) *Four–wire clock thermostats.* This arrangement required four wires, two that powered the clock and two other wires that provided the necessary current to effect the same heating or cooling control as a conventional, non–set–back thermostat.

(3) *Two–wire clock thermostats.* This arrangement has a thermostat in the living area and a "box" in the basement.[5] *See* Tr. 27–37; R–238.

9. Hand–wound clock thermostats have the disadvantage of requiring winding each time the temperature is set back. Four–wire thermostats have the disadvantage of requiring four wires to the thermostat rather than the two wires normally required. Hence, a person wishing to replace a non–set–back thermostat with a four–wire clock thermostat must run two additional wires from the thermostat to an electrical outlet in the wall. The two–wire clock thermostat

requires installation of the necessary "box" in the basement.

10. Prior to the invention defined by the plaintiff's claims, persons skilled in the art of thermostats were of the opinion that it would be desirable to replace existing conventional non–set–back thermostats with time variable set–back thermostats, in order to conserve energy with a minimal effect on the user's comfort. However, it was also considered essential from a commercial viewpoint that such a time–variable thermostat be relatively inexpensive and also be simple and easy to install so that replacement could be accomplished by a homeowner without the services of an electrician. *See* Joint Stip. 16.

Furthermore, because time–controlled thermostats are principally used in offices and homes, it is essential that the clock mechanism be quite accurate and not routinely lose or gain time.

11. In 1962, plaintiff's personnel met for the purpose of reviewing plaintiff's automatic set–back thermostat program. *See* Tr. 43; R–360 to 363.

12. After the meeting, a document dated December 27, 1962, was prepared by plaintiff's employee Sutton. In the document is a sketch of an idea by employee Kompelien for a two–wire set–back thermostat that could be used to replace a non–set–back thermostat. *See* R–366 to 368; Tr. 51.

13. There is no significant difference between the sketch by Kompelien dated December 27, 1962, and Figure 3 of the Kompelien patent application that was filed on December 10, 1975. *Compare* R–368 (sketch) *and* R–12 (application). The sketch shows a two–wire set–back thermostat that contains all the elements called for by the claims of plaintiff's application. *See* Tr. 150–58.

14. The Kompelien invention defined by Claims 1, 2, and 4 through 11 of the patent application in suit provides a unitary elec-

---

**4.** *See* 37 C.F.R. § 1.146 (1979). Claim 3 is not before the Court.

**5.** The "box" contains the circuitry necessary to power both the clock and the heating or cooling unit. *See* Tr. 36–37.

trical time–variable thermostat that can replace an existing conventional thermostat without requiring additional wiring. It provides a time–variable thermostat with an electrically operated timer in which the energy supply for the timer is independent of the electrical wiring external to the thermostat housing. It provides a time–variable thermostat with an electrically operated timer connected to a rechargeable battery. *See* Joint Stip. 20. It is superior to previously existing set–back thermostats to the extent that there is no need to set it back manually each day, and it requires only two wires and no "box" in the basement.

15. At the time of Kompelien's idea expressed in the December 27, 1962, memorandum, rechargeable battery powered clocks were commercially available. *See* Tr. 51, 52, 134–35.[6]

16. All the components necessary to construct an operable device that encompassed the claims in plaintiff's patent application were known and available to the public at least by the year 1963. *See* Tr. 51–52, 59.

17. Plaintiff was in a position to apply for a patent on Kompelien's idea in 1963. *See* Tr. 59. Plaintiff decided not to apply for a patent because the device was not a commercially feasible product. *See id.*

18. From a technical standpoint, and disregarding its commercial feasibility, a laboratory model of Kompelien's idea could have been made in no more than two or three weeks at any time after 1962–63. A model probably could have been constructed in as little as two days. *See* Tr. 82, 89, 166.

19. Beginning shortly after the meeting discussed in the December 27, 1962, memorandum, plaintiff set out to find a source of a clock motor suitable for a commercial embodiment of Kompelien's idea. The search for a clock motor continued through 1973. *See* Tr. 52–59.

20. The search for a suitable clock motor involved regular consultation with other manufacturers concerning the performances and prices of these manufacturers' products. The search also included testing of products by plaintiff's employees. *See* Tr. 53.

21. No later than January, 1974, plaintiff determined that there was a clock motor available that was suitable for commercial manufacture of the Kompelien device. That clock motor was the Quartzmatic Model produced by the Westclox Division of General Time Corporation. *See* Tr. 58, 96. During late 1973 and early 1974, clocks using quartz crystals that were both inexpensive and accurate came into general use.

22. On August 13, 1974, a patent application for a two–wire set–back thermostat was filed with the Patent and Trademark Office in the name of Charles H. Perkins, et al., assignors to Robertshaw Controls Co. of Richmond, Virginia. Claims identical to claims 9 through 11 of the Kompelien application exist as claims 1 through 3 of the Perkins application. *See* Joint Stip. 23.

23. In *Robertshaw Controls Co. v. Emerson Electric Co.*, C.A. No. 6–71848 (E.D. Mich.1978), those claims that are identical to claims 9 through 11 of the Kompelien application were held valid by the United States District Court for the Eastern District of Michigan, in Findings of Fact and Conclusions of Law dated January 5, 1978. After notice of appeal was filed, the parties reached an agreement under which the appeal was withdrawn and the original action was dismissed. *See* Joint Stip. 24; Plaintiff's Post–Trial Brief, Appendix A.

24. Prior to the filing of the Kompelien application, which occurred on December 10, 1975, plaintiff had no knowledge of any activity by any other manufacturer or com-

6. In addition to disputes regarding clock motors, at early stages in the litigation the parties disagreed as to the availability of suitable rechargeable batteries, and whether failure to reveal a particular brand of battery constituted a failure to set forth plaintiff's "best mode" as required by 35 U.S.C. § 112 (1976). Defendant apparently abandoned this argument in his Post–Trial Memorandum. *See* Def. Post–Trial Memorandum 35-37. In any event, the Court finds that a variety of rechargeable batteries were available at all times relevant to this litigation, and that plaintiff was not required to reveal a particular brand of battery in its patent application.

petitor concerning the development, manufacture, or marketing of a battery–powered, electric time–controlled thermostat for use in a two–wire control circuit falling within the scope of the Kompelien application. *See* Joint Stip. 21.

25. Although the Patent Office Board of Appeals affirmed the patent examiner's rejection of plaintiff's application, plaintiff established before the Board a reasonably strong case that the Kompelien invention fulfilled a long–felt need. *See* R–243. Furthermore, the invention has met with an unusual degree of public acceptance. *See* R–241.

26. Plaintiff first constructed a working model of the Kompelien circuit that might constitute a reduction to practice no earlier than October, 1974. This model[7] was not a thermostat–that is, it did not control any heating or cooling unit–but was simply a working circuit similar to that depicted in the Kompelien application. *See* Tr. 91, 117.

27. Further models were constructed by plaintiff during 1975. These models also were not thermostats, but simply circuits. *See, e. g.,* Tr. 182; Plaintiff's Ex. 13.

28. During a time commencing before the Perkins application was filed on August 13, 1974, until plaintiff's application was filed on December 10, 1975, plaintiff made regular accounting charges against its budget for development of a commercially suitable time–controlled set–back thermostat. *See* Tr. 66–67, Plaintiff's Ex. 9.

29. During this time commencing prior to August 13, 1974, and extending into 1975, plaintiff was steadily engaged in contacting other manufacturers with regard to the capabilities and prices of motors and batteries suitable for successful commercial manufacture of Kompelien's device. Although batteries and motors existed that could have been used to construct a workable thermostat, plaintiff was uncertain that it could

successfully market such a thermostat with the components available prior to sometime in 1975.

30. The patent to Nelson (3,620,448) discloses a set–back thermostat that operates by means of a unit in the living area and a separate "box," containing circuitry essential to the device, which is attached to the heating unit. *See* Tr. 37–38.

31. The patent to Schaf (3,214,670) discloses a rechargeable clock that is not in any way a thermostatic device. *See* Tr. 97–99; R–245.

32. Neither Nelson nor Schaf, the only prior art relied upon by the Patent and Trademark Office in rejecting the Kompelien application as obvious,[8] discloses a two–wire rechargeable clock thermostat of the type disclosed and claimed by Kompelien.

33. There is no combination of the Nelson and Schaf patents that can result in the invention disclosed and claimed in the Kompelien application. *See* Tr. 73–74.

34. The Nelson and Schaf patents do not preclude a patent being issued on the Kompelien application; the Nelson and Schaf patents do not render the Kompelien device obvious within the meaning of 35 U.S.C. § 103 (1976).

35. At the time the Kompelien patent application in suit was filed, the Westclox Quartzmatic clock motor was nationally advertised and widely available, and may be presumed to have been generally known to those skilled in the art. *See* Tr. 67–69; Plaintiff's Ex. 12.

36. As of the time the Kompelien application was filed, the Westclox Quartzmatic clock motor was not critical to the successful practice of the Kompelien invention, as evidenced by the availability of other quartz–type clocks and by the use of different components by other manufacturers of set–back thermostats. *See* Tr. 70–71.

---

7. This model was introduced into evidence and was discussed at length during the trial. It was referred to as the "gray model" because it was constructed on a gray board.

8. In defendant's Post–Trial Memorandum there is mentioned for the first time the possibility

that a patent to Kronmiller (2,729,719), in combination with the Nelson and Schaf patents, might render the Kompelien device obvious. No evidence has been given on this point, and the Kronmiller patent will not be considered by this Court.

37. The Kompelien patent application as filed contained an enabling disclosure under 35 U.S.C. § 112 (1976) such that the Kompelien invention disclosed therein could be practiced by one skilled in the art without further experimentation.

38. In its application of December 10, 1975, plaintiff satisfied the requirement of 35 U.S.C. § 112 (1976) that an applicant set forth the best mode known to him for constructing the device.

39. Plaintiff's claimed invention is not obvious in light of the prior art, within the meaning of 35 U.S.C. § 103 (1976).

40. Although plaintiff conceived the claimed invention prior to August 13, 1974, plaintiff did not meet the requirement of reasonable diligence in reducing the invention to practice, within the meaning of 35 U.S.C. § 102(g) (1976). Thus plaintiff is not entitled to a patent because the Kompelien device was anticipated by the patent to Perkins, within the meaning of 35 U.S.C. § 102(e) (1976).